FILED

2011 Feb-11 AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **COURTNEY ORLANDO CRUTCHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-10-S-01176-NE** |
| | ) | |
| **ATHENS POLICE DEPARTMENT; WAYNE HARPER; and RANDY VICKERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Courtney Orlando Crutcher,[1] filed this action, proceeding *pro se*, on

May 5, 2010.[2]  The complaint alleges that plaintiff's constitutional rights were

---

[1] It is unclear from the record whether this is the correct spelling of plaintiff's first and middle names.  The handwritten caption on the General Complaint Form for *pro se* litigants that initiated this case lists plaintiff as "Courtney Orlando Crutcher."  Doc. no. 1 (Complaint), at 1 (*note well*: some of the pages of the complaint are hand numbered as exhibits; however, without individually numbered pages, citations to the record would be confusing and, accordingly, the court will refer to the page numbers assigned by the Case Management/Electronic Case Filing system, rather than any indication of page number within the individual documents themselves).  This same version was also handwritten atop the motion to proceed *in forma pauperis* filed simultaneously with the complaint.  Doc. no. 2, at 1.  However some of the internal documentation within the complaint names plaintiff "Cordney Olando Crutcher."  *E.g.*, *id.* at 5, 9.  Plaintiff's first name is listed as "Cordney" atop both the subpoena issued, doc. no. 17, at 1, and on his response to defendants' motions to dismiss; doc. no. 19, at 1; doc. no. 20, at 1; but without any indication of how his middle name is to be spelled.  Because the iteration was handwritten atop the first document filed in this case, and, therefore, is in the official caption of this case, the court will call plaintiff Courtney Orlando Crutcher, where necessary, with apologies if this is incorrect.

[2] Doc. no. 1 (Complaint), at 1.

violated during a traffic stop conducted by Officer Randy Vickers, a defendant in this action, on December 8, 2008, that ultimately resulted in plaintiff's arrest.[3]  Plaintiff also asserted the same claims against Officer Vickers' employer, the Athens Police Department, and his supervisor, Athens Police Chief Wayne Harper.[5]  This action is presently before the court on motions to dismiss filed by all defendants.[6]

## I.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief

---

[3] *See id.* at 5-6.

[5] *Id.* at 1.

[6] Doc. no. 8 (Motion to Dismiss of Athens Police Department); doc. no. 10 (Motion to Dismiss of Chief Wayne Harper); doc. no. 11 (Motion to Dismiss of Officer Randy Vickers).

> can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*., at 557 (brackets omitted).

*Iqbal*, 129 S. Ct. at 1949-50.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  The principle underlying this liberal construction standard is "to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable."  *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).  However, such "leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action."  *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds* (internal citations omitted). Moreover, "a litigant's *pro se* status in civil litigation generally will not excuse mistakes he makes regarding procedural rules."  *Thompson v. United States Marine Corp*., No. 09-16523, 2010 WL 3860578, at *3 (11th Cir. October 7, 2010)

(*per curiam*) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")); *Albra v. Advan, Inc.*, 490 F.3d 829, 829 (11th Cir. 2007) (same).

Even though the Eleventh Circuit long held claims asserted under § 1983 against individual officers to a higher-than-usual standard — *see*, *e.g.*, *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998) (observing that "this circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims") — the Eleventh Circuit's opinion in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), holds that utilization of such a heightened pleading standard is no longer warranted, in light of the plausibility requirement articulated in *Iqbal*.

> [Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards *in general*, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing *Twombly*, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss. The Court did not apply a heightened pleading standard.
>
> While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004)] , *GJR*, and *Danley* [*v. Allen*, 540 F.3d 1298 (11th Cir. 2008)] reaffirm application of a heightened pleading standard for § 1983

cases involving defendants able to assert qualified immunity, we agree . . . that *those cases were effectively overturned* by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*.  A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations.  The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall*, 610 F.3d 709-10 (bracketed alterations and emphasis supplied).

## II.  FACTS AS ALLEGED[7]

On the evening of December 8, 2008, plaintiff was leaving his grandmother's house in Athens, Alabama in a truck when he passed a police patrol vehicle traveling in the opposite direction driven by defendant, City of Athens Police Officer Randy Vickers ("Officer Vickers").[8]  Apparently after observing Officer Vickers turn his

---

[7] As always is the case in the context of ruling upon a motion to dismiss:

At this point in the litigation, we must assume the facts set forth in the plaintiffs' complaint are true.  *See Anza* [*v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453,] 126 S. Ct.[1991,] 1994 (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").  Because we must accept the allegations of plaintiffs' complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

[8] Doc. no. 1 (Complaint), at 5.  Nearly all of the facts in this opinion come from a copy of an "Athens Police Department Statement" handwritten and submitted to the Department by plaintiff

vehicle around, plaintiff turned into the parking lot of a convenience store and went inside, where he purchased a "piece of gum."[9]

As plaintiff walked out of the convenience store, Officer Vickers stepped out of his patrol vehicle and asked plaintiff for his license.[10]  Plaintiff refused Officer Vickers' request, saying "come on man[, I] just left my grandma [*sic*] house going home . . . ." [11] Officer Vickers then asked plaintiff to sit in the backseat of his patrol vehicle "for police safety."[12]  Plaintiff initially complied.[13]

At that point, plaintiff admits that he and Officer Vickers "exchanged ugly words a couple of times . . . ."[14]  During these exchanges, plaintiff got out of the patrol vehicle and approached Officer Vickers.[15]  It appears from plaintiff's allegations that Officer Vickers then directed plaintiff to return to the patrol vehicle and plaintiff complied.[16]  Officer Vickers asked plaintiff where the "tag receipt" for his vehicle (a term for a registration document that all motorists are required by § 40-

---

apparently on the day after the events at issue and appended to the *pro se* complaint form he filed to initiate this action.  *See id.* at 1, 5-6.

   [9] *Id.*

   [10] *Id.*

   [11] *Id.*

   [12] *Id.*

   [13] Doc. no. 1 (Complaint), at 5.

   [14] *Id.*

   [15] *Id.*

   [16] *Id.* at 5-6.

12-260(b)(1) of the Alabama Code to have in their possession when operating an automobile) was located.[17]  Once again, plaintiff got out of the patrol vehicle and this time walked to the rear of his truck and opened the tailgate.[18]

Officer Vickers informed plaintiff that he was going to have his truck towed and the two then "exchanged words again."[19]  Plaintiff told Officer Vickers that he "wasn't signing any tickets."[20]  Officer Vickers told plaintiff that he was being charged with disorderly conduct.[21]  Plaintiff got back into the backseat of the patrol vehicle while Officer Vickers called for backup.[22]  Then, plaintiff got back out of the patrol car for a third time and "let Mr. Vickers put [hand]cuffs on" him.[23]

Again, plaintiff alleges, the two engaged in a bout of "exchanging words" while he was restrained and Officer Vickers waited for backup to arrive.[24]  At some point following this third verbal quarrel, according to plaintiff, Officer Vickers "choke[d him] with two hands [and he] blacked out . . . ."[25]  When plaintiff regained consciousness he was on his back in the rear seat of the patrol vehicle and,

---

[17] *Id.* at 6.

[18] Doc. no. 1 (Complaint), at 6.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] Doc. no. 1 (Complaint), at 6.

[24] *Id.*

[25] *Id.* at 6, 13.

immediately thereafter, the two "had ugly words [again] and that's true."[26]

The following day, plaintiff submitted a statement to the Athens Police Department complaining about his treatment.[27]   The Police Department promptly conducted an internal investigation and found that Officer Vickers used only the force necessary to effect plaintiff's arrest.[28]   Eight days after the incident, on December 16, 2008, the Chief of the City of Athens Police Department, Wayne Harper, sent a letter to plaintiff informing him of that conclusion.[29]

## III.  DISCUSSION

### A.    Plaintiff's Claims Against the Athens Police Department

In his complaint, plaintiff named the "Athens Police Department" as a defendant.[30]   The Police Department of the City of Athens, Alabama, has moved to dismiss all claims asserted against it on the basis that it does not constitute a legally suable entity for purposes of claims alleged under 42 U.S.C. § 1983.[31]

A claim under § 1983 may only be maintained if brought against an entity that is legally amenable to suit under the law of the state in which the action is brought.

---

[26] *Id.* at 6.

[27] *See generally id.* at 5-6 (copy of the statement plaintiff apparently filed).

[28] *See* doc. no. 1 (Complaint), at 10 (detailing the investigation's findings in a letter dated December 16, 2008).

[29] *Id.*

[30] *Id.* at 1.

[31] Doc. no. 8.

8

*See, e.g.*, Fed. R. Civ. P. 17(b)(3) (providing that capacity to be sued shall be determined "by the law of the state where the district court is located").  "Sheriff's departments and police departments are not usually considered legal entities subject to suit . . . ."  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citations and internal quotation marks omitted).  Under Alabama law,

> All *municipal organizations* now existing in the State of Alabama, whether incorporated under the general laws of the state or by special act of the legislative department of the state government, and now exercising corporate powers or functions and *all towns and cities that may hereafter be incorporated* under the provisions of this title shall be bodies politic and corporate, using a common seal, which may at any time be changed, and having perpetual succession under the name now used or hereafter assumed as provided in this title, and each under such name as the "City of ........" or "Town of ........," as the case may be, *shall sue and be sued* . . . .

Ala. Code § 11-40-1 (emphasis supplied).  Hence, while a municipality itself has the capacity to sue and be sued, the statutory language suggests, by negative implication, that the departments, divisions, or agencies of a municipality do not.

There is considerable authority holding that a "sheriff's department" does not constitute a legally suable entity under Alabama law.  The Alabama Supreme Court so held in at least three instances.  *See Ex Parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003) ("It is clear under Alabama law that [a] sheriff's department is not a legal entity subject to suit."); *King v. Colbert County*, 620 So. 2d 623, 626 (Ala. 1993) ("The

Colbert County Sheriff's Department is not a legal entity.  Therefore, one cannot maintain an action against it."); *White v. Birchfield*, 582 So. 2d 1085, 1087 (Ala. 1991) ("The Chambers County Sheriff's Department is not a legal entity subject to suit.  Therefore, a cause of action may not be maintained against the Chambers County Sheriff's Department."); *see also Dean*, 951 F.3d at 1215 (recognizing that a "sheriff's department" lacks capacity to be sued).

Though there is no authoritative ruling that squarely says as much, there is no reason why these holdings should not by analogy be equally applicable to a "police department."  The negative inference drawn from the statutory section quoted above would logically apply in the same fashion.  Additionally, the Alabama Supreme Court has recently noted in *dicta* that:

> Generally, the departments and subordinate entities of municipalities, counties, and towns that are not separate entities or bodies do not have the capacity to sue or be sued in the absence of specific statutory authority. . . .  *Among subordinate entities generally lacking the capacity to sue or be sued separately are police departments* . . . .

*Ex Parte Dixon*, No. 1081048, — So. 3d —, 2010 WL 3075294, at *1 n.1 (Ala. August 6, 2010) (citation and quotation marks omitted) (omission in original) (emphasis supplied).

Furthermore, various federal district courts in Alabama have come to the

conclusion that a "police department" does not constitute a suable entity under Alabama law.  *See, e.g.*, *Johnson v. Andalusia Police Department*, 633 F. Supp. 2d 1289, 1301 (M.D. Ala. 2009) ("Johnson's claims against the Andalusia Police Department must fail because police departments are generally not considered legal entities subject to suit."); *Blunt v. Tomlinson*, No. 04-0124-CG-M, 2009 WL 921093, at *4 (S.D. Ala. April 1, 2009) ("In Alabama, a city's police department is not a suable entity or a proper party under state law or for § 1983 purposes."); *Lee v. Wood*, No. 04-00710-BH-B, 2007 WL 2460756, at *7 (S.D. Ala. August 27, 2007) ("Inasmuch as the City of Mobile Police Department is not a suable entity under Alabama law, the claim against defendant City of Mobile Police Department is frivolous and due to be dismissed.").

Plaintiff has not expressly conceded that his claims against the Athens Police Department are due to be dismissed.  Nonetheless, he has tacitly made such a concession in that he has failed entirely to respond to the Department's well-reasoned and well-supported argument in support of dismissal.  *See, e.g.*, *Carvel v. Godley*, No. 10-10766, 2010 WL 4910167, at *2 (11th Cir. Dec. 2, 2010) ("'Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'") (quoting *G.J.R. Investments, Inc. v. County. of Escambia*, 132 F.3d 1359,

1369 (1998), *overruled in part on other grounds*).  Accordingly, plaintiff's claims

against the Athens Police Department are due to be dismissed in their entirety.

**B.     Plaintiff's Claims Against Athens Police Officer Randy Vickers**

Though plaintiff makes no reference in the complaint to precisely what kind

of claim he asserts, the facts he alleges, construed liberally, sound in the Fourth

Amendment's prohibition against the use of excessive force when effecting an

arrest.[32]  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989) ("Where, as here, the

excessive force claim arises in the context of an arrest or investigatory stop of a free

citizen, it is most properly characterized as one invoking the protections of the Fourth

Amendment.").  Defendants argue that any such claim is due to be dismissed, either

because plaintiff has not pled facts that would support an excessive force claim, or

because Officer Vickers would be qualifiedly immune.  At this early juncture in this

action, the court cannot agree with either of defendants' contentions.

"The Fourth Amendment's freedom from unreasonable searches and seizures

---

[32] Defendants also address a possible Fourteenth Amendment claim.  *See* doc. no. 12, at 12-15.  The Eleventh Circuit has acknowledged that "[t]he precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this circuit."  *Hicks v. Monroe*, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005).  The court agrees with defendants that plaintiff's claims appear to arise "in the course or arrest" rather than "*after* the incidents of arrest are completed . . . ."  *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (emphasis in original); *see* doc. no. 12, at 8-9.  Plaintiff has not directly contested the point, nor should he, given that "the Fourth Amendment standard . . . is commonly an easier standard for a plaintiff to meet."  *Hicks*, 422 F.3d at 1253 n.7.

encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). Analysis of a Fourth Amendment excessive force claim requires a court to examine "whether the officer's conduct [was] objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (alteration supplied). However, the Supreme Court has made plain that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396

The "reasonableness standard" requires the court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* "In determining whether the use of force was reasonable, factors to consider include: (1) 'the severity of the crime at issue'; (2) 'whether the suspect poses an immediate threat to the safety of the officers or others'; and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lloyd v. Van Tassell*, 318 Fed. Appx. 755, 757 (11th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). Also relevant to this determination are "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Lee*, 284 F.3d at 1198 (citing *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)).

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (internal citation and quotation marks omitted).   "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "'[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).   The objective reasonableness determination "must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard*, 311 F.3d at 1346 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The threshold question in determining whether an officer is entitled to qualified immunity is whether he was "acting within the scope of his discretionary authority

14

when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (citation and internal quotation marks omitted).  Once this is demonstrated, as it undisputably is in this action, the court must ask:  "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).  Even if this inquiry is answered in the affirmative, law enforcement officers will nonetheless be entitled to qualified immunity "unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant officials were doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

At this early stage in the litigation, the court cannot hold that plaintiff has failed to allege a potentially viable claim that Officer Vickers' use of force was unconstitutionally excessive.  According to the complaint, after plaintiff had voluntarily allowed himself to be handcuffed, Officer Vickers choked him with two hands until he lost consciousness.  While plaintiff admittedly had previously failed to comply with orders and continued to argue with Officer Vickers, viewing only his allegations, as this court must, it appears that he was restrained and subdued, not

actively threatening Officer Vickers or resisting arrest, when he was choked. Under those circumstances, the use of a two-handed chokehold of sufficient force and for long enough to result in unconsciousness far exceeded the force necessary to effect a lawful arrest. Plaintiff has adequately pled that Officer Vickers' use of force at that point was not objectively reasonable and, therefore, that it violated his Fourth Amendment rights.

Having so determined, the court must still ask whether the law was sufficiently clearly established to withdraw the shield of qualified immunity. A plaintiff can show that an officer's use of force violated clearly established law in two ways: (1) "a controlling and materially similar case [that] declares the official's conduct unconstitutional;" or (2) "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (internal citation and quotation marks omitted). Plaintiff has cited no caselaw and, therefore, the only basis upon which this court could deny Officer Vickers qualified immunity is if his actions went "so far beyond the hazy border between excessive and acceptable force that [he] had to know he was violating the Constitution even without caselaw on point." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (alterations supplied). "This test

entails determining whether application of the excessive force standard would inevitably lead every reasonable officer in the Defendants' position to conclude the force was unlawful." *Priester*, 208 F.3d at 926-27 (citation, brackets, and internal quotation marks omitted) (alteration in original). Based purely upon the facts alleged, the court must hold that Officer Vickers is not entitled to qualified immunity at the motion to dismiss stage of this action.

The determination that Officer Vickers is not now entitled to qualified immunity is bolstered by several cases in which the Eleventh Circuit has determined that the application of force to an arrestee *after* he has been subdued is significantly more likely to violate Fourth Amendment standards. In *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), a plaintiff who had previously fled and threatened officers with a baseball bat ultimately voluntarily lay upon the ground and surrendered. *Id.* at 1418. Taking the facts in the light most favorable of the plaintiff, the court found that the plaintiff was "offering no resistance at all" and, thus, that a use of force that broke the plaintiff's arm was "obviously unnecessary to restrain even a previously fractious arrestee." *Id.* at 1420. Similarly, in *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002), an officer stopped a woman over for improperly honking her horn, pulled her out of her vehicle and handcuffed her. *Id.* at 1198. Although she then posed no risk to the officer or risk of flight, the officer slammed her head against the

trunk of her car.  *Id.*  This constituted excessive force, and the officer was not entitled to qualified immunity because the law was sufficiently clearly established that all reasonable officers would have known the force was unconstitutionally excessive. *Id.* at 1198-99.   In determining that qualified immunity was not available, the Eleventh Circuit stated "the clear and obvious principle that once an arrest[ee] has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ the severe and unnecessary force allegedly used here."  *Id.* at 1200 (alteration supplied).

The facts that come to light in discovery may ultimately tell a different story. However, the facts as pled sufficiently allege that Officer Vickers applied unconstitutionally excessive force during the course of plaintiff's arrest.  Further, because that force was applied after plaintiff had voluntarily submitted to restraints, and hence after any risk that he would fight or flee had been vitiated, the unconstitutionality of Officer Vickers' actions was so self-evident that he was sufficiently on notice to deprive him of qualified immunity.  Accordingly, Officer Vickers' motion to dismiss plaintiff's claims against him is due to be denied.[33]

## C.     Plaintiff's Claims Against Athens Police Chief Wayne Harper

In his response to defendants' motions to dismiss, plaintiff asserts that his

---

[33] Doc. no. 11.

"claim against defendant Wayne Harper is based upon his supervisory position over the primary defendant [Officer] Randy Vickers."[34]   Athens Police Chief Wayne Harper ("Chief Harper") asserts that plaintiff has pled no factual matter whatsoever that states a claim upon which he could be determined liable.[35]   Even assuming for the present purposes that plaintiff's constitutional rights were violated, the court agrees that plaintiff has provided no basis upon which liability could be imputed to Chief Harper.

"[S]upervisory officials are not liable under § 1983 for unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted).   "Supervisory liability lies [only] where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper v. Lawrence County, Alabama*, 592 F.3d 1227, 1236 (11th Cir. 2010) (alteration supplied).

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the

---

[34] Doc. no. 19, at 1.

[35] Doc. no. 10, at 1-2.

> supervisor directed the subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop them from doing
> so.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal citations, quotation

marks, and alterations omitted).  "The standard by which a supervisor is held liable

in her individual capacity for the actions of a subordinate is extremely rigorous."

*Mann v. Taser International, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (quoting

*Braddy v. Florida Department of Labor & Employment Security*, 133 F.3d 797, 802

(11th Cir. 1998)).

Plaintiff's complaint contains no allegation that Chief Harper personally

participated in his arrest.  Indeed, Chief Harper only appears three times in the entire

fifteen page text of the complaint:  once in the caption; once as the signatory on a

letter to plaintiff informing him that an investigation of his complaint with the

Department had been internally investigated and determined to be meritless, a

document that was appended to plaintiff's complaint; and once in plaintiff's

description of his complaint and the responsive letter.[36]  Plaintiff's statement of facts

makes no reference to Chief Harper.  This is plainly inadequate.  Even a plaintiff

proceeding *pro se* must allege enough to put a defendant on notice of the nature and

bases of the claims asserted against him.  Plaintiff's complaint contains no facts

---

[36] *See* doc. no. 1 (Complaint), at 1, 10, 13.

related to any conduct of Chief Harper at all, much less any facts from which a reasonable inference could be drawn that he did or failed to do anything rising to the level of a constitutional violation.

Despite his total failure to allege any basis upon which a claim against Chief Harper could be premised, plaintiff now contends in his response to defendants' motions to dismiss that "Vickers [*sic*] actions are those of a repeated nature," and that Chief Harper had received multiple complaints about Vickers' conduct, but had failed to "correct the unprofessional behavior of Vickers . . . ."[37]  Plaintiff misunderstands both what is required of a complaint to initiate a federal lawsuit, and, what types of actions may be maintained in federal courts pursuant to § 1983.

To survive a motion to dismiss, a *complaint*, not a subsequent response to a motion to dismiss, *must contain some allegation* that would give a court reason to believe there is a basis in the law for a plaintiff's claim.  Second, § 1983 is not a remedy for "unprofessional behavior."  Rather, it is a vehicle for vindicating clearly established federal *statutory* and *constitutional* rights.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).  It is not intended to be a

---

[37] Doc. no. 19, at 2.

code of etiquette for law enforcement officials who are necessarily granted significant discretion in the conduct their extraordinarily important duties. Chief Harper's signature on the letter informing plaintiff that an internal investigation had determined that Officer Vickers used only what force was necessary is far from sufficient to saddle him with individual liability for Officer Vickers' actions. Finding absolutely no basis upon which Chief Harper could be held liable, his motion to dismiss all claims plaintiff asserts against him[38] is due to be granted.[39]

## IV.  CONCLUSION AND ORDER

In accordance with the foregoing, the motions to dismiss filed by the Athens Police Department[40] and Athens Police Chief Wayne Harper[41] are GRANTED, and all of plaintiff's claims against those defendants are due to be, and the same hereby are, DISMISSED with prejudice. For the reasons stated above, the motion to dismiss filed by Athens Police Officer Randy Vickers[42] is DENIED. The stay previously entered in this action is dissolved, and the parties are directed to resume the discovery

---

[38] Doc. no. 10 (Motion of Athens Police Chief Wayne Harper to Dismiss Complaint).

[39] The court will also note that plaintiff's attempt to subpoena Athens Police Department records, doc. no. 17 in order to uncover "prior offenses against citizens and performance deficiencies within the Athens Police Dept." in no way affects this determination. Neither the federal courts nor their processes are mere tools for a plaintiff to conduct fishing expeditions for facts that apparently cannot, in good faith, be alleged.

[40] Doc. no. 8.

[41] Doc. no. 10.

[42] Doc. no. 11.

process, consistent with the Federal Rules of Civil Procedure, as expeditiously as is practicable.

DONE and ORDERED this 11th day of February, 2011.

_____
United States District Judge