## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| COURTNEY ORLANDO CRUTCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-10-S-01176-NE |
| | ) | |
| RANDY VICKERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Courtney Orlando Crutcher originally commenced this action as a *pro se* plaintiff.[1]  He alleged multiple violations of his constitutional rights by Athens, Alabama Police Officer Randy Vickers ("Officer Vickers") during a traffic stop conducted on December 8, 2008, that resulted in plaintiff's arrest.[2]  Originally, plaintiff also asserted the same claims against Officer Vickers' employer, the City of Athens Police Department, and his supervisor, Athens Police Chief Wayne Harper.[5]

---

[1] *See* doc. no. 1 (Complaint filed May 5, 2012), at 1.  *Note well*:  some of the pages of the complaint are hand numbered as exhibits; however, without individually numbered pages, citations to the record would be confusing.  Accordingly, the court will refer to the page numbers assigned by the Case Management/Electronic Case Filing system, rather than any indication of page numbers within the individual documents themselves.

[2] *See id.* at 5-6.

[5] *Id.* at 1.

After this court denied the motion to dismiss filed by Officer Vickers, but granted the motions filed by the Athens Police Department and Athens Police Chief Wayne Harper,[6] plaintiff filed an amended complaint against the remaining original defendant, Officer Vickers, as well as the new municipal defendant, the City of Athens, Alabama ("the City").[7]  It should be noted that the Amended Complaint, as well as the "Second Amended Complaint" filed the following month,[8] were drafted by the attorney who first appeared on behalf of the plaintiff after commencement of this action:  *i.e.*, Everett Wess of the Birmingham, Jefferson County Bar Association.[9] Plaintiff discharged Mr. Wess on May 17, 2011, however,[10] and replaced him with Christopher L. Burrell of the Birmingham Bar, who appeared of record on June 9, 2011.[11]  That relationship did not last; on May 4th of the following year, Mr. Burrell asked for leave to withdraw as counsel for plaintiff, stating that an "adversity" had developed between him and his client.[12]  This court did not immediately rule upon that motion, because of two requests by plaintiff for additional time in which to retain

---

[6] *See* doc. no. 23 (Order Granting Motions to Dismiss of Athens Police Department and Athens Police Chief Wayne Harper and Denying Motion to Dismiss of Athens Police Office Randy Vickers).

[7] *See* doc. no. 26 (Amended Complaint, filed Mar. 15, 2011).

[8] *See* doc. no. 32 (Second Amended Complaint, filed Apr. 15, 2011).

[9] *See* doc. no. 25 (Mr. Wess's notice of appearance, and, combined motion for leave to file an amended complaint, filed Mar. 15, 2011).

[10] *See* doc. nos. 42 (Motion to Withdraw) and 42-1 ("Discharge of Attorney").

[11] *See* doc. no. 44 (Notice of Appearance).

[12] *See* doc. no. 48 (Motion to Withdraw, filed May 4, 2012).

substitute counsel,[13] but finally granted the motion on July 26, 2012.[14] Thus, Courtney Orlando Crutcher again appears before the court as a *pro se* litigant.

The court now will address defendants' motions to dismiss all claims asserted in plaintiff's amended and second amended complaints.[15] For the reasons explained below, this court will grant that motion in all respects, except for plaintiff's excessive force, assault and battery, and outrage claims.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

---

[13] *See* doc. nos. 51 and 52.

[14] *See* doc. no. 53.

[15] *See* doc. no. 35 (Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint by Officer Randy Vickers); doc. no. 37 (Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint by the City of Athens).

3

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570.   A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid*.   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).   The principle underlying this liberal construction standard is "to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).   However, such "leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds* (internal citations omitted). Moreover, "a litigant's *pro se* status in civil litigation generally will not excuse mistakes he makes regarding procedural rules." *Thompson v. United States*

4

*Marine Corp.*, No. 09-16523, 2010 WL 3860578, at \*3 (11th Cir. October 7, 2010) (*per curiam*) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")); *Albra v. Advan, Inc.*, 490 F.3d 829, 829 (11th Cir. 2007) (same).

For many years, the Eleventh Circuit applied a heightened pleading standard to claims asserted under § 1983 against individual police officers. *See*, *e.g.*, *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998) (observing that "this circuit . . . has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims"). The Circuit's opinion in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), backed away from that position, and held that utilization of such a pleading standard is no longer warranted, in light of the plausibility requirement articulated in *Iqbal*.

> [Even though] the *Iqbal* opinion concerns Rule 8(a)(2) pleading standards *in general*, the Court specifically describes Rule 8(a)(2) pleading standards for actions regarding an unconstitutional deprivation of rights. The defendant federal officials raised the defense of qualified immunity and moved to dismiss the suit under a 12(b)(6) motion. The Supreme Court held, citing *Twombly*, that the legal conclusions in a complaint must be supported by factual allegations, and that only a complaint which states a plausible claim for relief shall survive a motion to dismiss. The Court did not apply a heightened pleading standard.
>
> While *Swann* [*v. Southern Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004)] , *GJR*, and *Danley* [*v. Allen*, 540 F.3d 1298 (11th Cir.

2008)] reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, we agree . . . that *those cases were effectively overturned* by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*.  A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations.   The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall*, 610 F.3d 709-10 (bracketed alterations and emphasis supplied).

Upon finding the pleaded facts inadequate, a court may dismiss the complaint either with or without granting leave to amend.  Federal Rule of Civil Procedure 15(a)(2) instructs that courts "should freely give leave when justice so requires." Nevertheless, because plaintiff has already filed two amended complaints with the aid of retained counsel, this court is not inclined to allow him a third attempt to plead a viable claim.

## II.  FACTS AS ALLEGED[16]

---

[16] As always is the case in the context of ruling upon a motion to dismiss:

At this point in the litigation, we must assume the facts set forth in the plaintiffs' complaint are true.  *See Anza* [*v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453,] 126 S. Ct.[1991,] 1994 (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").  Because we must accept the allegations of plaintiffs' complaint as true, what we set out in this opinion as "the

Plaintiff alleges a long history of personal conflict with Officer Vickers.[17]  In December of 2008, for example, while Officer Vickers was engaged in training another officer,[18] he allegedly waited in the middle of the road for plaintiff to pull out of his girlfriend's mother's house and pulled him over.[19]  When plaintiff asked why, Officer Vickers replied that it was for a routine traffic stop.[20]  During the course of the stop, Officer Vickers asked plaintiff's girlfriend "why was she wit[h] a person like [him]," and repeatedly asked plaintiff "what am I going to do for him."[21]  However, Officer Vickers did not write a ticket for any violations.[22]

On the evening of December 8, 2008, plaintiff was leaving his grandmother's house in Athens in a truck when he passed a police patrol vehicle traveling in the opposite direction driven by Officer Vickers.[23]  After observing Officer Vickers turn

_____

facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

[17] *See* doc. no. 1, at 5.  Plaintiff described this history in three complaints:  a handwritten original complaint that detailed all five alleged incidents of friction between plaintiff and Officer Vickers, a first amended complaint that described three of those incidents, and a second amended complaint that "incorporate[d] all paragraphs from previous complaint and amended complaint" and "correct[ed] a scrivener[']s error in his amended complaint under his jurisdiction paragraph."

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id* (alterations supplied).

[22] *Id.*

[23] Doc. no. 1, at 5.  Nearly all of the facts in this opinion come from a copy of an "Athens Police Department Statement" handwritten and submitted to the Department by plaintiff apparently

his vehicle around, plaintiff pulled into the parking lot of a convenience store and walked inside, where he purchased a "piece of gum."[24]  When plaintiff walked out of the convenience store, Officer Vickers stepped out of his patrol vehicle and asked plaintiff for his driver's license.[25]  Plaintiff refused Officer Vickers' request, saying "come on man[, I] just left my grandma [*sic*] house going home . . . ." [26]  Officer Vickers then asked plaintiff to sit in the backseat of his patrol vehicle "for police safety."[27]  Plaintiff initially complied.[28]

At that point, plaintiff admits that he and Officer Vickers "exchanged ugly words a couple of times . . . ."[29]  During these exchanges, plaintiff got out of the patrol vehicle and approached Officer Vickers.[30]  It appears from plaintiff's allegations that Officer Vickers then directed plaintiff to return to the patrol vehicle and plaintiff complied.[31]  Officer Vickers asked plaintiff where the "tag receipt" for his vehicle (a term for a registration document that all motorists are required by Alabama Code §

---

on the day after the events at issue and appended to the *pro se* complaint form he filed to initiate this action.  *See id.* at 1, 5-6.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] Doc. no. 1, at 5.

[30] *Id.*

[31] *Id.* at 5-6.

40-12-260(b)(1) to have in their possession when operating an automobile) was located.[32]  Once again, plaintiff got out of the patrol vehicle and this time walked to the rear of his truck and opened the tailgate.[33]

Officer Vickers informed plaintiff that he was going to have his truck towed and the two then "exchanged words again."[34]  Plaintiff told Officer Vickers that he "wasn't signing any tickets."[35]  Officer Vickers told plaintiff that he was being charged with disorderly conduct.[36]  Plaintiff got back into the backseat of the patrol vehicle while Officer Vickers called for backup.[37]  Then, plaintiff got back out of the patrol car for a third time and "let Mr. Vickers put [hand]cuffs on" him.[38]

Again, plaintiff alleges, the two engaged in a bout of "exchanging words" while he was restrained and Officer Vickers waited for backup to arrive.[39]  At some point following this third verbal quarrel, according to plaintiff, Officer Vickers "choke[d him] with two hands [and he] blacked out . . . ."[40]  When plaintiff regained consciousness he was on his back in the rear seat of the patrol vehicle and,

---

[32] *Id.* at 6.

[33] *Id.*

[34] *Id.*

[35] Doc. no. 1, at 6.

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 6, 13.

immediately thereafter, the two "had ugly words [again] and that's true."[41]

The following day, plaintiff submitted a statement to the Athens Police Department complaining about his treatment.[42]   The Police Department promptly conducted an internal investigation and found that Officer Vickers used only the force necessary to effect plaintiff's arrest.[43]   Eight days after the incident, on December 16, 2008, the Chief of the City Police Department, Wayne Harper, sent a letter to plaintiff informing him of that conclusion.[44]

On May 15, 2009, plaintiff drove past Officer Vickers and saw the officer make a strangling motion at him.[45]

On May 27, 2009, Officer Vickers "discharged his duty from another traffic accident to come bother [plaintiff]," an encounter that resulted in noise ordinance violations and disorderly conduct charges against him.[46]

Finally, on an undisclosed date, Officer Vickers parked his cruiser "about 80 to 100" (presumably, feet) from plaintiff's home and issued him a speeding citation for doing "62 in a 45."[47]

---

[41] Doc. no. 1, at 6.

[42] *See generally id.* at 5-6 (copy of the statement plaintiff apparently filed).

[43] *See id.* at 10 (detailing the investigation's findings in a letter dated December 16, 2008).

[44] *Id.*

[45] *Id.* at 14; doc. no. 26 ¶ 11.

[46] *Id.* (alteration supplied); *see also* doc. no. 26 ¶ 11.

[47] Doc. no. 1, at 14.

# III.  DISCUSSION

## A.    Statute of Limitations With Regard to all Claims Against the City

### 1.      Statute of Limitations

First, this court is urged to dismiss all claims against the City because they are barred by the statute of limitations under Alabama Code § 6-2-38 (1975).[48]  The Supreme Court has held that federal courts facing a motion to dismiss a § 1983 claim must borrow the forum state's general, or residual, statute of limitations for personal injury actions.  *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  Thus, federal courts in Alabama have regularly ruled on such motions under the state's general two-year statute of limitations.  *See* Ala. Code § 6-2-38(*l*) (1975).[49]  In *Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir. 1992), and *Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11th Cir. 1989) (*en banc*), the Eleventh Circuit applied the *Owens* rule retroactively to hold that plaintiffs had failed to satisfy the two-year statute of limitations and dismiss their § 1983 claims as untimely.  *See Lufkin*, 956 F.2d at 1108; *Jones*, 876 F.2d at 1484.

### 2.      Timing of Filings

Plaintiff commenced this action *pro se* on May 5, 2010.[50]   The original

---

[48] Doc. no. 37 ¶ 1-2.

[49] Ala. Code § 6-2-38(*l*) (1975) (1993 Replacement Volume) provides:  "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

[50] *See* doc. no. 1.

complaint alleged the facts described above, invoked the court's jurisdiction pursuant to 42 U.S.C. § 1983, and named Officer Vickers, the Athens Police Department, and Athens Police Chief Wayne Harper as defendants.[51]  In the caption of the complaint, plaintiff wrote next to the names of defendants, "City of Athens, AL, 951 Hobbs St. East, Athens, AL 35611."[52]

The Athens Police Department moved to dismiss the complaint on the grounds that it is not capable of being sued.[53]  In its brief, defendant asserted that "[u]nder Alabama law, it is only a municipality itself that has the capacity to sue and be sued, as opposed to agencies, departments or divisions of the municipality."[54]  On March 15, 2011, after plaintiff's claims against the Athens Police Department and Athens Police Chief Wayne Harper were dismissed,[55] plaintiff filed an amended complaint naming Officer Vickers and the City as defendants.[56]

In counts one through eight of his first amended complaint, plaintiff alleges that defendants are liable for actions that occurred either on or before December 8, 2008;[57]

---

[51] *Id.*

[52] *Id.*

[53] *See* doc. no. 9 (Brief in Support of Motion to Dismiss Plaintiff's Complaint by the Athens Police Department) ¶ 2.

[54] *Id.*

[55] *See* doc. no. 23, at 22.

[56] *See* doc. no. 26.

[57] *See id.* ¶ 13-28.

only in count nine does plaintiff allege that defendants are liable for actions occurring after that date.[58]  Specifically, counts one through eight refer only to the incident in which Officer Vickers allegedly choked plaintiff,[59] while count nine also mentions the interaction in which Officer Vickers allegedly saw plaintiff and made a strangling motion at him.[60]  None of the counts in the first amended complaint mention the other three incidents from plaintiff's original complaint.

Thus, plaintiff was required to bring the claims alleged in counts one through eight either on or before December 8, 2010, to comply with the two-year statute of limitations.  Plaintiff filed his original complaint on May 5, 2010, so the claims in that complaint were not time-barred.  However, plaintiff's original complaint did not name the City as a defendant.  Because plaintiff failed to correct this error by December 8, 2010, and waited to file his first amended complaint until March 15, 2011, the City argues that the claims against it are barred by the statute of limitations.  In order to avoid dismissal, plaintiff's claims against the City must "relate back" to the filing of his original complaint.

### 3. "Relation Back" Doctrine

Federal Rule of Civil Procedure 15(c) governs the "relation back" of

---

[58] *See id.* ¶ 29-31.

[59] *See id.* ¶ 13-28.

[60] *See id.* ¶ 29-31.

13

amendments to complaints. *See Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999) (holding that a plaintiff's § 1983 claim was barred unless he could demonstrate that "under Rule 15(c)[,] the amended complaint naming [the new defendants] relate[ed] back to the original complaint, which was filed just before the statute [of limitations] ran") (alterations supplied). Rule 15(c) provides:

(1)    When an Amendment Relates Back.   An amendment to a pleading relates back to the date of the original pleading when:

(A)  the law that provides the applicable statute of limitations allows relation back;

(B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading; or

(C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(*i*)  received such notice of the action that it will not be prejudiced in defending on the merits; and

(*ii*) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The goal of "relation back" principles is "'to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.'" *Advanced Magnetics, Inc. v. Bayfront*

14

*Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997) (citing Fed. R. Civ. P. 15 Advisory Committee Note (1991)). "The drafters of Rule 15(c)(3) included the mistake proviso, as the commentary explains, in order to resolve 'the problem of a misnamed defendant' and allow a party 'to correct a formal defect such as a misnomer or misidentification.'" *Wayne*, 197 F.3d at 1103 (citing Fed. R. Civ. P. 15 Advisory Committee Note (1991)).

Courts generally hold "the allegations of the pro se complaint . . . to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Thus, the goal of permitting parties to correct mistakes is especially applicable where, as here, the plaintiff is proceeding *pro se.*

In *Hill v. United States Postal Service*, 961 F.2d 153 (11th Cir. 1992), the Eleventh Circuit reversed an order that dismissed plaintiff's complaint as untimely, and held that it was "both just and practicable to permit [plaintiff], a pro se litigant, to proceed with his case against . . .the head of the agency which he had improperly named in his original complaint." *Id.* at 156 (alterations supplied).  Likewise, in *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 2d 114 (D.R.I. 2004), a district court applied the "relation back" doctrine to allow a plaintiff who mistakenly sued a prison facility to amend his complaint to name the corporation that operated the facility as a defendant.  *Id.* at 135.

Here, "relation back" applies because plaintiff's claims satisfy all three requirements of Federal Rule of Civil Procedure 15(c).  First, Alabama Code § 6-2-38(l) does not bar "relation back" of amendments to complaints in personal injury actions, and Alabama Rule of Civil Procedure 15(c) allows "relation back" on the same grounds as Federal Rule of Civil Procedure 15(c).  Second, the claims against Officer Vickers in the original complaint and the claims against the City in the first amended complaint each arise from the conduct of the same officer with regard to the same individual during the course of the same incident.

Finally, the City received notice of this action with the service of the complaint and summons on the Athens Police Department, a subdivision of the City that is represented by the same attorney.  The City must have known that plaintiff would have filed this action against it, but for a mistake as to the proper party's identity, because that same attorney filed a motion to dismiss the claims against the Athens Police Department on the grounds that a municipality is the proper entity subject to suit for the actions of an officer.  As a result, this court will deny the motion to dismiss all claims against the City on these grounds.

**B.     Non-Claims Statutes With Regard to State Law Claims Against the City**

Next, this court is urged to dismiss all state law claims against the City because plaintiff failed to comply with the requirement of the "non-claims statutes" found in

16

Alabama Code §§ 11-47-23 and 11-47-192.[61]   Alabama Code § 11-47-23 provides:

> All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred.  Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Alabama Code § 11-47-192 provides:

> No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed.

"[T]he notice of claim statute is not a statute of limitations, but rather is a statute of nonclaim[.]" *Birmingham v. Davis*, 613 So. 2d 1222, 1224 (Ala. 1992).  As a result, plaintiff cannot use the doctrine of "relation back" in Alabama Rule of Civil Procedure 15(c) to save a claim otherwise barred by Alabama Code § 11-47-23 (1975).  *Id.* (granting summary judgment in favor of city).

However, although plaintiff's failure to satisfy the non-claims statute bars recovery, he need not allege that he complied with the statute in the complaint.  *See Hamilton v. Anniston*, 268 Ala. 559, 563 (1959) (holding that compliance with non-claims statutes "need not be averred in the complaint"); *Maise v. Gadsden*, 232 Ala. 82, 83 (1936) (holding that non-claims statutes "have been construed as not requiring

---

[61] Doc. no. 37 ¶ 2.

an affirmative averment of compliance in the complaint"); *Huntsville v. Goodenrath*, 13 Ala. App. 579, 585 (1915) (holding that "it was not necessary for the complaint in this case to allege a filing of a statement of the demand sued on with the city authorities before bringing suit").

Rather than being a threshold jurisdictional matter or component of *plaintiff's tort claim* against a municipality, the non-claims statutes provide a *municipal defense* to such claims. Thus, the question of whether plaintiff complied with the non-claims statute is a matter to be decided at summary judgment, but not on a motion to dismiss. The *Hamilton* court reversed a decision granting the city's demurrer on the grounds that the failure to satisfy a non-claims statute was a "defensive matter" and not "a good ground of demurrer." 268 Ala. at 563. Likewise, the *Goodenrath* court reversed a grant of demurrer because the "failure to file the claim is defensive matter proper[l]y available only by plea." 13 Ala. App. at 585 (alteration supplied).

Here, the rule against dismissing a complaint for failure to comply with the non-claims statute seems particularly sound, given the positions of the parties at this stage in the litigation. While plaintiff did not allege that he complied with the non-claims statute in his complaint, he presented evidence of compliance in response to the City's motion to dismiss.[62] Whether plaintiff's evidentiary submissions in fact establish that

---

[62] *See* doc. no. 39-1 (Plaintiff's Sworn Statement of Damages).

he complied with the non-claim statute is a matter to be decided at some later stage in the case, not on a motion to dismiss in the absence of a complete factual record. As a result, this court will deny the motion to dismiss all state law claims against the City on these grounds.

**C.    Failure to Allege a Policy or Custom With Regard to the Excessive Force, Failure to Intervene, Unlawful Search and Seizure, and Denial of Due Process Claims Against the City**

This court is urged to dismiss the excessive force, failure to intervene, unlawful search and seizure, and denial of due process claims against the City because "Plaintiff fails to allege therein that a policy statement, ordinance, regulation or officially adopted decision or a custom, practice or act of a policymaker for the Defendant City of Athens caused or resulted in the constitutional deprivation alleged."[63]

The Eleventh Circuit holds that a municipality is not liable for the allegedly unconstitutional actions of its officers *unless* the municipality had a policy or custom of tolerating unconstitutional behavior:

> [A]lthough municipalities can be sued under section 1983, liability must be predicated upon more than a theory of respondeat superior. . . . [L]iability may be predicated upon a showing that a government employee's unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to

---

[63] Doc. no. 37 ¶ 3-6.

> governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels."

*Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)) (alterations supplied).

Further, this Circuit defines a "custom" to be a widespread practice adopted by official or unofficial municipal policymakers:

> [T]he term "custom". . .include[s] "persistent and wide-spread . . . practices," "permanent and well settled" practices, and "deeply embedded traditional ways of carrying out policy." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S. Ct. 1598, 1613-14, 26 L. Ed. 2d 142 (1970). Although not necessarily adopted by a person or body with rulemaking authority, customs can become so settled and permanent as to have the force of law. *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2035-36. To have this effect, the custom must be "created" by those whose "edicts or acts may fairly be said to represent official policy." *Id.* at 694, 98 S. Ct. at 2037; *see Hearn v. City of Gainesville*, 688 F.2d 1328, 1334 (11th Cir. 1983).

*Fundiller*, 777 F.2d at 1442 (alterations supplied).

Finally, the United States Supreme Court has declined to allow a plaintiff to establish a "custom" by evincing a single constitutional violation by a single municipal employee:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will

be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985).

In *Gilmere v. Atlanta,* 774 F.2d 1495 (11th Cir. 1985), an administratrix sued two police officers, their supervisors, and the city of Atlanta, Georgia under state tort law and § 1983 for shooting and killing a suspect resisting arrest. *Id.* at 1496-97. The Eleventh Circuit reviewed a district court judgment entered after reversal and remand, and held that the city was not liable under § 1983, and "not only because the shooting and beating was an isolated occurrence, but also because the plaintiff has failed to prove that the alleged inadequacy of [one officer's] training was the result of a municipal policy or custom within the meaning of *Monell*." *Id.* at 1504. Here, plaintiff alleges that:

> Defendant City of Athens tolerated and institutionalized practices, and ratified the misconduct stated above by a) Failing to properly train, discipline, restrict, and control employees; b) Failing to implement adequate precautions in the hiring, promotion and retention of law enforcement personnel; [sic] Failing to adequately investigate civilian complaints regarding excessive force; and d) Establishing a pattern and practice of tolerating and suppressing complaints of excessive force against officers in the City of Athens and creating a [sic] culture of tolerance of unconstitutional behavior.[64]

Although "it may be questionable whether an alleged policy of inadequate training or

---

[64] Doc. no. 26 ¶ 12 (alterations supplied).

negligent hiring will suffice to impose liability on a municipality for the unconstitutional actions of its police officers," *Fundiller*, 777 F.2d 1436, 1442-43, the proper procedural posture for challenging a police misconduct claim that alleges a policy or custom of violations is a motion for summary judgment, not a motion to dismiss.

In *Fundiller*, the Eleventh Circuit reversed an order granting a city's motion to dismiss a complaint alleging that the city had a policy or custom of improperly hiring, training, and supervising the police. 777 F.2d at 1442. The *Fundiller* court reasoned that,

> [i]f established, this allegation provides the requisite fault on the part of the City, as a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a "custom" within the meaning of *Monell*. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). In addition, [plaintiff's] allegation would provide the causal link between the challenged conduct and the City's policy, because [the officer] would have been acting in accordance with the policy[.]" *See Acoff v. Abston*, 762 F.2d 1543, 1548 (11th Cir. 1985).

*Id.* (alterations supplied).

Although the courts in *Bash v. Patrick*, 608 F. Supp. 2d 1285 (M.D. Ala. 2009), and *Warren v. Coffee County Comm'n*, 942 F. Supp. 1412 (M.D. Ala. 1995), both dismissed plaintiffs' police misconduct claims on the grounds that plaintiffs had not established that the government had a policy or custom of violations, those courts only

did so on a motion for summary judgment, not a motion to dismiss.  *See Bash*, 608 F. Supp. 2d at 1303; *Warren*, 942 F. Supp. at 1419.

Further, the courts in *Telfare v. City of Huntsville*, 841 So. 2d 1222 (2002), and *Houston v. Athens*, 1986 U.S. Dist. LEXIS 16841 (N.D. Ala. 1986), dismissed such claims on a motion to dismiss because plaintiffs did not allege that the city had *any* relevant policy or custom.  *See Telfare*, 841 So. 2d at 1230 (noting that plaintiff's "complaint does not even hint that his treatment was the result of any official policy of the City"); *Houston*, 1986 U.S. Dist. LEXIS 16841 at 29-30 (quoting from complaint that does not contain such allegations).

Here, plaintiff is facing a motion to dismiss, not a motion for summary judgment.  Further, plaintiff's complaint alleges that the City "[f]ail[ed] to properly train, discipline, restrict, and control employees" and "creat[ed] a culture of tolerance of unconstitutional behavior."[65]  If plaintiff successfully proves these allegations, it will provide the fault on the part of the City.  *See Fundiller*, 777 F.2d at 1442.  As a result, this court will deny the motion to dismiss the excessive force, failure to intervene, unlawful search and seizure, and denial of due process claims against the City on these grounds.

**D.    Failure to Allege the Presence of Officers who Could have Intervened With Regard to the Failure to Intervene Claim Against both Defendants**

---

[65] *Id.* (alterations supplied).

This court is urged to dismiss the failure to intervene claim against both defendants because plaintiff has failed to allege the presence of officers who could have intervened at the scene of the incident.[66]

"The law of this circuit is that 'an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.'" *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341-42 (11th Cir. 2007) (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000); *Fundiller v. Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "But it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing *Priester*, 208 F.3d at 924).

Thus, a failure to intervene claim requires a minimum of *two* police officers: the officer who used excessive force, and the officer who failed to intervene. However, neither the description of the alleged choking incident in the failure to intervene count of the first amended complaint nor the description of that incident in the text of the original complaint mentions the presence of a City employee other than Officer Vickers.[67]   Because an officer who uses excessive force cannot fail to

---

[66] *See* Doc. no. 35 ¶ 2; Doc. no. 37 ¶ 4.

[67] *See* Doc. no. 1, at 6; doc. no. 26 ¶ 10.

intervene against himself, this court will dismiss the failure to intervene claim.[68]

## E.  Failure to Plead Lack of Probable Cause With Regard to the Unlawful Search and Seizure Claim Against both Defendants

This court is urged to dismiss the unlawful search and seizure claim against both defendants because it is duplicative of the excessive force claim, and because it has no basis under the facts of this case.[69]

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" (*Wyo. v. Houghton*, 526 U.S. 295, 299-300 (1999)), while the Fourteenth Amendment allows the courts to apply the Fourth Amendment to states.  *See Hudson v. Michigan*, 547 U.S. 586, 590 (2006).  With regard to automobile traffic stops, the Supreme Court holds that:

> Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision.  *See Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).  An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances.  As a

---

[68] Interestingly, plaintiff cites *Fundiller* for the proposition that those "officials *who are present at the scene* and observed another official violate an individual's constitutional rights may be held liable under § 1983." Doc. no. 26 ¶ 18 (emphasis supplied).  Thus, plaintiff's own authority does not support his theory of liability against either Officer Vickers or the City.

[69] *See* Doc. no. 35 ¶ 1; Doc. no. 37 ¶ 5.

> general matter, the decision to stop an automobile is reasonable where
> the police have probable cause to believe that a traffic violation has
> occurred. *See Prouse, supra*, at 659; *Pennsylvania v. Mimms*, 434 U.S.
> 106, 109, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977) (*per curiam*).

*Whren v. United States*, 517 U.S. 806, 809-10 (1996).

Thus, "a traffic stop supported by probable cause d[oes] not violate the Fourth

Amendment regardless of the officer's actual motivations[.]"  *Reichle v. Howards*,

132 S. Ct. 2088, 2094 (2012) (alterations supplied).  Because plaintiff alleges that

"Officer Vickers[] conducted a traffic stop for speeding,"[70] but does not allege that

plaintiff was not, in fact, speeding, this court will dismiss the unlawful search and

seizure claim.

**F.     Failure to Plead a Denial of Process With Regard to the Denial of Due
         Process Claim Against both Defendants**

Next, this court is urged dismiss the denial of due process claim against both

defendants because it is duplicative of the excessive force claim and because it has

no basis under the facts of this case.[71]

The Southern District of Alabama dismissed a denial of due process claim that

arose out of an arrest and detention.  *See Phillips v. Irvin*, 2006 U.S. Dist. LEXIS

39871, 68-69 (S.D. Ala. June 14, 2006).  In doing so, the court noted that plaintiff's

claim for denial of due process failed to specify "what process [plaintiff] contends he

---

[70] *See* doc. no. 26 ¶ 24.

[71] *See* Doc. no. 35 ¶ 1; Doc. no. 37 ¶ 6.

was entitled to before he could properly be arrested and detained" and "appear[ed] untenable, as a matter of law, given the Court's findings, *supra*, of arguable probable cause for [plaintiff's] arrest." *Id.* (alterations supplied).

As in *Phillips*, plaintiff's denial of due process claim presents an enigma. Instead of specifying the process that plaintiff believes he was due, that claim largely quotes plaintiff's failure to intervene claim verbatim.[72]   Again, plaintiff does not challenge whether Officer Vickers had probable cause for making the stop for speeding by arguing that he was not, in fact, speeding.  As a result, this court will dismiss the denial of due process claim.

## G.   Failure to State Particular Facts With Regard to the Deliberate Indifference Claim Against both Defendants

This court is urged to dismiss the deliberate indifference claim against Officer Vickers because he is not a policymaker,[73] and against the City because "Plaintiff fails to allege egregious systemic deficiencies with respect to training or supervision with sufficient particularity as to evidence a deliberate indifference to the known consequences of a failure to train or supervise."[74]

The Supreme Court describes deliberate indifference as "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

---

[72] *Compare* doc. no. 26 ¶ 18; *id.* ¶ 26.

[73] *See* Doc. no. 35 ¶ 3.

[74] Doc. no. 37 ¶ 7.

consequence of his action." *Board of the County Commissioners v. Brown*, 520 U.S. 397, 410 (1997). Thus, a plaintiff suing the government for deliberate indifference must demonstrate

> that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable *policymaker* to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* at 411 (emphasis supplied).

Consequently, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412 (emphasis in original).

Instead of alleging that Officer Vicker was a policymaker,"[75] or that a City employee was deliberately indifferent to a high probability that *Officer Vickers* would inflict the *particular* injury that plaintiff suffered, plaintiff merely states a series of

---

[75] Indeed, it is doubtful that plaintiff *could* allege that Officer Vickers was a policymaker because "the police officer is not a policymaker in this country." *See Foley v. Connelie*, 435 U.S. 291, 311 (U.S. 1978) (Justice Stevens, dissenting).

*general* allegations of "systemic deficiencies."[76]  As a result, this court will dismiss the deliberate indifference claim.

### H.    Failure to State Recognized Claims With Regard to the Negligent Supervision and Inadequate Training Claims Against both Defendants

Next, this court is urged to dismiss the negligent supervision and inadequate training claims against both defendant because such claims do not exist.[77]

Alabama Code § 11-47-190 allows a plaintiff to sue a municipality for the negligence of its employees.  In relevant part, this statute provides:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty[.]

Ala. Code § 11-47-190 (alteration supplied).

Thus, "[m]unicipal liability under Section 11-47-190 is based on the doctrine of respondeat superior." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (citing *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995)) (alteration supplied).  Before a city can be liable under that doctrine, one or more of its employees must be liable for a tort.  *Id.*

Under Alabama law, one element of the tort of negligent supervision or

---

[76] *See* doc. no. 26 ¶ 28.

[77] *See* Doc. no. 35 ¶ 4; Doc. no. 37 ¶ 8.

training of an officer is the existence of a master-servant relationship between the officer and his supervisor.  *See Ott*, 169 F. Supp. 2d at 1314.  As a result, a plaintiff who seeks to sue a municipality for negligent training or supervision "must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate:" *e.g.*, the police officer accused of misconduct.  *Id.*

However, a supervisor "is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant."  *Ott*, 169 F. Supp. 2d at 1314 (citing *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 806 (Ala. 2000); *Hauseman v. University of Ala. Health Servs. Found.*, 793 So. 2d 730, 732 (Ala. 2000)).  Thus, as in *Ott*, this court is "satisfied that no such cause of action exists."  *Id.*

Further, assuming the presence of a master-servant relationship, employer liability for negligent supervision or training also "requires, among other elements, proof of the employer's actual or constructive awareness of the employee's incompetency."  *Ott*, 169 F. Supp. 2d at 1315 (citing *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1002 (Ala. 1993)).  This court does not find that either element exists in this case.

In *Mills v. Wex-Tex Industries*, 991 F. Supp. 1370 (M.D. Ala. 1997), a supervisor allegedly groped and threatened his subordinate. *Id.* at 1377-78. When the subordinate sued the supervisor and the president of his employer for negligent hiring, training, and retention, the court granted summary judgment, holding that the supervisor was not his own employer, and that the president was not the master of the supervisor. *Id.* at 1388.

Similarly, in *Ott*, an officer struck one individual in the head with his pistol and shot another in the head, killing him. *Ott*, 169 F. Supp. 2d at 1305-06. When plaintiffs sued the city that employed the officer for negligent hiring, retention, training, and supervision, the court granted summary judgment on two separate grounds: first, that plaintiffs had failed to prove the city vicariously liable for the actions of the officer's supervisors because they were not his masters, and second, that even assuming the existence of a master-servant relationship, plaintiffs had presented no evidence that those supervisors were aware of the officer's alleged incompetence. *Id.* at 1314-15.

As in *Mills*, this court declines to ascribe liability to Officer Vickers for negligent supervision or inadequate training because the officer was not his own employer. Further, as in *Ott*, this court holds that municipal liability is based on vicarious liability and thus requires the existence of a master-servant relationship.

31

However, the city employees supervising Officer Vickers were not his masters and, even if they were, plaintiff has not alleged that those employees were aware of Officer Vickers' incompetence. As a result, this court will dismiss the negligent supervision and inadequate training claims.

## I.     Failure to Allege Required Elements With Regard to the Outrage Claim Against Both Defendants

Next, this court is urged to dismiss the outrage claim against both defendants because the facts alleged do not satisfy the required elements of the claim.[78]  To establish the tort of outrage under Alabama law, plaintiff must allege three elements: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Mills v. Wex-Tex Indus.*, 991 F. Supp. 1370, 1386 (M.D. Ala. 1997) (citing *Moore v. Spiller Associated Furniture, Inc.*, 598 So. 2d 835, 836 (Ala. 1992); *Perkins v. Dean*, 570 So. 2d 1217, 1219 (Ala. 1990)). As a result, the tort of outrage is narrow in scope:

> The tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, this court has held in a large majority of the outrage cases reviewed that no jury question was presented. . . . In fact, in the 12 years since [*American Road Service Co. v.*] *Inmon* [394 So. 2d 361(Ala. 1981)] was decided, all cases in which this court has found a jury question on an outrage claim have fallen within only three categories: 1) cases having

---

[78] *See* Doc. no. 35 ¶ 4; Doc. no. 37 ¶ 9.

to do with wrongful conduct in the context of family burials . . . 2) a case where insurance agents employed heavy handed, barbaric means in attempting to coerce the insured into settling an insurance claim . . . [and] 3) a case involving egregious sexual harassment.

*Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993) (alterations supplied, internal citations omitted).

In *Mills*, a supervisor allegedly groped and threatened his subordinate. *See Mills*, 991 F. Supp. at 1377-78. While the *Mills* court noted the difficulty of meeting the standard in *Thomas*, it denied the *supervisor's* motion for summary judgment because it could not "conclude *as a matter of law* that [the supervisor's] conduct in this case did not rise to the level of egregiousness necessary to successfully state a claim for outrageous conduct." *Id.* at 1386 (emphasis and alteration supplied).

By contrast, the *Mills* court granted the *employer's* motion for summary judgment because, although the employer's response to plaintiff's complaint was not entirely adequate, there were no allegations that the physical assaults and threats continued *after the employer was notified of the problem*. *Id.* at 1386-87. Thus, the employer's conduct did not rise to the level of extremity that was contemplated by *Inmon*. *Id.*

Here, plaintiff alleges that Officer Vickers "choked the Plaintiff while he was handcuffed and in the back of the patrol car . . . until he was unconscious.[79] The

---

[79] Doc. no. 26 ¶ 30.

following day, plaintiff submitted a statement to the Athens Police Department complaining about his treatment.[80]  Six months later, plaintiff alleges that he drove past Officer Vickers and saw the officer make a strangling motion at him.[81]

If these allegations are true, then Officer Vickers assaulted and threatened the plaintiff.   Further, Officer Vickers made the threat *after the Athens Police Department was notified of the problem.*  Because this court cannot conclude *as a matter of law* that defendants' conduct did not rise to the level of egregiousness necessary to state an outrage claim, this court will deny the motion to dismiss that claim.

## IV.  CONCLUSION AND ORDER

For the reasons explained above, this court hereby dismisses the failure to intervene claim, the unlawful search and seizure claim, the denial of due process claim, the deliberate indifference claim, the negligent supervision claim, and the inadequate training claim.  However, the motions to dismiss the excessive force claim, the assault and battery claim, and the outrage claim are denied.

DONE and ORDERED this 5th day of September, 2012.

_____
United States District Judge

---

[80] *See generally* doc. no. 1, at 5-6 (copy of the statement plaintiff apparently filed).

[81] *Id.* at 14; doc. no. 26 ¶ 30.